STATE OF NEBRASKA, APPELLANT, V. ROBERT R. NASH, APPELLEE.

421 N.W.2d 41

Filed March 25, 1988.    No. 88-108.

Charles A. Kandt, Lincoln County Attorney, for appellant.

P. Stephen Potter, for appellee.

BOSLAUGH, J.

This is an interlocutory appeal by the State under Neb. Rev. Stat. § 29-116 (Reissue 1985) to review the order of the district court sustaining the defendant's motion to suppress statements made by him to state patrolmen on February 17, 1987.

The record shows that on February 16, 1987, a search warrant was served on the defendant, Robert R. Nash, at his residence in North Platte, Nebraska. As a result of the search a number of items were seized from his residence and a vehicle. Nash was present during the search, but was not placed under

arrest. According to the defendant, Sgt. James J. Parish of the Nebraska State Patrol told Nash at that time that he was in a great deal of trouble and that it would be to his benefit to talk to the State Patrol.

· Later that day, Nash contacted his attorney, P. Stephen Potter, and requested that Potter contact the State Patrol. Potter then spoke with Sergeant Parish, who briefed Potter on the search warrant and the background of the investigation. Sergeant Parish said that it would perhaps be to Nash's benefit to talk to them and provide his side of the story. According to Parish, he did not indicate in any way that such meeting would be confidential.

Potter called Lt. Terry Dowling of the State Patrol the following day and arranged for his client to meet with the State Patrol that afternoon. Lieutenant Dowling testified that during the conversation, Potter stated that he would like to bring Nash in for a "clear-the-air type meeting" and give the State Patrol an idea of Nash's involvement in the case. According to Lieutenant Dowling, he did not in any way indicate that such a statement would be confidential or in lieu of prosecution.

Nash and Potter arrived at the State Patrol office around 4 or 5 p.m. that day and met with Sergeant Parish and Investigator Teddy D. Mashek. During the interview Nash was not under arrest, no charges had been filed against him, he was free to leave at any time, and his attorney was present with him at all times. No *Miranda* warnings were given. During the interview Nash made certain admissions, shortly after which Potter ended the interview.

Nash testified that, prior to his admissions, Sergeant Parish told him that the conversation would be confined to the State Patrol building and that the conversation would be confidential. Nash stated that Potter was with him at all times, including the time at which Sergeant Parish told him his statements would be in confidence.

Potter did not testify that he heard this promise of confidentiality. The closest his testimony came to this matter was during the following:

> THE COURT: Mr. Potter, you said that you felt the conversation with the State Patrol was to have been off the

record and confidential in the form of seeking a negotiated settlement.

Could you point out any specific statements made by anyone with the State Patrol that gave you that feeling or impression?

MR. POTTER: My conversations — it was my understanding that was the purpose of the meeting, to see if there was any possibility. If there was no possibility, then there was no need to proceed with a formal contract with the State Patrol; that there was certain information that they needed or wanted to talk to Mr. Nash about, and that this was the best way in which to do it.

Sergeant Parish testified that he remembered some discussion during the interview regarding Potter's concern for his client's safety and of Nash's fear of physical retribution, but that he remembered no agreement that the conversation would be confidential.

Investigator Mashek remembered discussing Nash's concern for his personal safety, but did not believe there were any conditions placed on what use would be made of the statements. He stated that the interview was conducted as he would conduct any interrogation of a witness or criminal suspect.

Potter testified:

I agreed to meet with the Nebraska State Patrol and to talk with the investigators and have my client visit with them. I felt that the conversation was one in negotiations in that through my works with the State Patrol, I find that the State Patrol is of the highest integrity.

. . . .

It disturbs me because I feel that the meeting was one arranged in confidentiality, off the record, to try to facilitate the best interests of my client and try to work out something with the State Patrol that would be beneficial to the State Patrol.

He further testified, on cross-examination, that no offers of negotiation were discussed or made by the State Patrol in regard to potential charges, potential immunity, potential reduction of charges, potential testimony, or anything else, but

that he believed they were in the process of exchanging information to determine whether there was a possibility that negotiations could be made. He further admitted that nothing was said to the effect that they were in the process of negotiations. Potter knew that only the county attorney's office had the authority to enter into plea agreements and that only the county attorney's office or the court could grant immunity.

The trial court found there was no improper inducement, threat, or promise by the Nebraska State Patrol in eliciting the statements from Nash during the interview, but that it appeared there was a misunderstanding or lack of communication between Potter and Nash, and the State Patrol. The court stated on the record that it would sustain the motion and suppress the statements for two reasons. The court began by noting that Nash had previously requested the court to allow Potter to withdraw from the case, which the court had refused to do until Nash secured other counsel at the time of the hearing, and the trial was set for the next day.

The court stated:

> [E]ven if the motion to suppress is overruled, Mr. Potter is placed in the situation of deciding with his client whether Mr. Potter should testify during the course of the trial to attempt to show the jury that the statement made by Mr. Nash was not made voluntarily . . . .
>
> . . . Mr. Potter would be placed on the horns of a dilemma and would not be in a position to properly represent Mr. Nash if he did not testify and would be in an unethical position if he chose to testify with Mr. Nash having no alternate counsel to continue with the remainder of the trial.
>
> So for that reason and for the second reason that it does appear to be a misunderstanding whether this conference was to be confidential or off the record, the Court is going to sustain the motion to suppress . . . .

The findings of fact made by a trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987), *cert. denied* _____ U.S. _____, 108 S. Ct. 180, 98 L. Ed. 2d 133 (1987); *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985).

Although the trial court stated, "I'm not suggesting in any way that there was any improper inducement or threat or promise by the Nebraska State Patrol in eliciting the comment or comments from Mr. Nash during the February 17, 1987, interview," the court sustained the motion to suppress, at least in part, upon the basis that there was a misunderstanding between Nash and the patrol as to whether Nash's statements were to remain confidential. Nash testified positively that Sergeant Parish had said to Nash that "the conversation we had in the Nebraska State Patrol building would be confined to the Nebraska State Patrol building." Although the reason appeared to be that Nash and Potter feared for the safety of Nash if his accomplice learned that he had become an informer, the statement, if made, had broader implications. If the testimony of Nash is accepted as true, then a reasonable man in the situation of Nash could believe that any statement he made would remain confidential and, thus, would not be used against him. That would be a substantial inducement to make a statement and would prevent a finding that the statement was voluntarily made.

In *State v. Smith*, 203 Neb. 64, 66-67, 277 N.W.2d 441, 443 (1979), we said:

> Before taking the statement the police officer stated that if the defendant cooperated with the police he would attempt to have the matter transferred to juvenile court. This was an inducement which under the circumstances of this case rendered the statement involuntary. In State v. McDonald, 195 Neb. 625, 240 N.W.2d 8 (1976), we stated: "To be admissible, a statement or confession must be free and voluntary. It must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."

The record does not show clearly that the trial court accepted the testimony of Nash as true. On the other hand, a finding that a misunderstanding sufficient to require that the statements be suppressed would have to be based on a finding that the defendant's belief that he had been promised confidentiality was reasonable. That, in turn, depends upon his statement that

Sergeant Parish said the statements would be confined to the patrol building.

In view of the conflicts in the evidence, and the finding of the trial court, I conclude that the order sustaining the motion to suppress must be affirmed.

AFFIRMED.