**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**FEBRUARY 1998 SESSION**

FILED

September 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9708-CC-00297** |
| | ) | |
| Appellant, | ) | |
| | ) | **WEAKLEY COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. WILLIAM B. ACREE, JR.,** |
| | ) | **JUDGE** |
| **DAVID BORNFRIEND,** | ) | |
| | ) | **(CRIMINALLY NEGLIGENT** |
| Appellee. | ) | **HOMICIDE AND ARSON)** |

FOR THE APPELLEE:

**STEVE CONLEY**
**BRUCE S. CONLEY**
Conley, Campbell, Moss & Smith
P.O. Box 427
Union City, TN 38261

FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH T. RYAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**THOMAS A. THOMAS**
District Attorney General

**JAMES T. CANNON**
Assistant District Attorney General
P.O. Box 218
Union City, TN 38261-0218

OPINION FILED:_____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Appellant, the State of Tennessee (state), appeals from a judgment of the trial court suppressing three statements made by David Bornfriend (defendant) to law enforcement officers. The state appeals pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure on the basis that the trial court's order granting the motion to suppress had the substantive effect of dismissing the indictment against the defendant. In this court, the state contends "the trial court erroneously suppressed the three statements given by the defendant because none of the statements were involuntary." After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

On May 5, 1997, the Weakley County Grand Jury returned a two count indictment charging the defendant with criminally negligent homicide, a Class E felony, and reckless burning, a Class A misdemeanor. The indictment alleges these two offenses were committed on January 11, 1997.

The facts in the record are rather sparse. The defendant was eighteen (18) years of age and a student at the University of Tennessee at Martin. He resided in a dormitory located on the university's campus. During the early morning hours of January 11, 1997, the defendant and a female companion were in the defendant's dormitory room. It appears the defendant lit a candle and went to sleep. He was awakened by the female companion and told there was a fire in the room. He noticed portions of the dormitory room were on fire. The defendant ordered the female companion to exit the room. He attempted to extinguish the fire but was

unsuccessful. He then left his room. A person residing in the dormitory was killed as a result of the fire.

The defendant sustained burns to his hands, stomach, thigh, and legs. He also inhaled a considerable amount of smoke. Someone carried him from the dormitory and took him to the Columbia Volunteer General Hospital. The defendant arrived in the emergency room at approximately 2:45 A.M. The burns sustained by the defendant were extremely painful. The pain intensity scale contained in the medical records has a range of zero to ten. The medical records state the defendant was suffering the most severe pain, a level of ten. The defendant was given Demorol for pain and Phenergan for nausea. Both of these medications have a sedative effect. The defendant was released from the hospital the next day, January 12, 1997. A physician advised the defendant to "take rest for one week."

The defendant made three (3) statements to officers from the University of Tennessee at Martin Police Department and the Tennessee Fire Marshall's Office. The first statement was given to Lieutenant Darrell Simmons, an investigator employed by the University of Tennessee at Martin Police Department, who was assigned to investigate the fire. Lieutenant Simmons went to the Columbia Volunteer General Hospital to determine the status of the individuals injured by the fire. When he visited the defendant, the defendant was unconscious. He later returned to interview the defendant at 7:45 A.M. and discovered the defendant was still unconscious.

Lieutenant Simmons and Johnny Hayes, who was employed by the State of Tennessee Fire Marshall's Office as an arson investigator, went to the hospital later

3

on the morning of January 11, 1997. The officers attempted to interview the defendant. Lieutenant Simmons testified the defendant "could talk okay, but he wasn't totally clear. He would fade in and fade out." When asked if the defendant was able to respond to the questions propounded, Lieutenant Simmons stated "to a degree, he was." According to Lieutenant Simmons, the defendant would answer a question, rotate his head, and close his eyes. When asked another question, the defendant would rotate his head towards Simmons and Hayes, answer the question, rotate his head, and close his eyes. This statement was not recorded.

On the morning of January 13, 1997, a subpoena duces tecum for the defendant's medical records and blood tests was obtained. The subpoena was issued without a docket number since no charges had been filed. Later in the day on January 13, 1997, Lieutenant Simmons asked the defendant to come to the Department of Safety building on campus because he wanted to talk to him about the details of the fire. The defendant appeared at 2:45 P.M. and was interviewed in the conference room. The defendant's medical records were released prior to the interview. The interview lasted for approximately one hour and fifteen minutes and the defendant's statement was tape recorded. During the interview, the defendant told Simmons and Hayes that he had no recollection of talking to them on January 11, 1997.

The following colloquy also took place during the interview:

Defendant: Am I required to answer these questions?

Hayes: You don't have to answer them, David. What we are trying to do, David, is we are--I am sure that by now you know that this is a very serious matter. I am sure that you know that the guy across the hall--he didn't make it through the fire.

4

Defendant: Yeah--which I deeply regret.

Hayes: I understand that, sir. All we are trying to do is that we are trying to find out what the facts are, David. That's all we're doing. What we are talking to you about in here is confidential. It's not going to be in the newspaper, on TV, nobody is going to know all this stuff. My files are strictly confidential. The people who get my files are my bosses in Nashville and the District Attorney. Okay, that's all. If you were--just "yeah, we were" because at some point down the road, we may have to ask you to be more specific but today we are not going to get into all that, okay?

Defendant: Yeah.

At the conclusion of the interview, the officers reiterated to the defendant "this conversation, like we said, is confidential, between us." Lieutenant Simmons arranged for a third interview on January 22, 1997. The following colloquy took place during Simmon's direct examination:

Q. Where did this interview take place?

A. In the conference room at the Department of Safety.

Q. How was it arranged?

A. It was arranged by me.

Q. What did you do to get Mr. Bornfriend there?

A. I asked Mr. Bornfriend could he come back for a follow up interview.

Q. Did he agree to do so?

A. Yes, he did.

****

Q. At the conclusion of the interview, what happened to Mr. Bornfriend; was he allowed to leave at that point?

A. Yes, he was.

5

The record does not reflect what the defendant said during the January 22, 1997 interview.

The trial court suppressed all three statements given by the defendant. The court found that due to the pain medication the defendant was receiving at the hospital when the first statement was given on January 11, the statement was "not a voluntary and willing statement." In regards to the statement given on January 13 at the Public Safety Building, the trial court ruled that the prior issuance of the subpoena <u>duces</u> <u>tecum</u> constituted the initiation of formal criminal charges and resulted in the attachment of the defendant's Sixth Amendment right to counsel. The court suppressed this statement since the defendant was interrogated without counsel present. The trial court also suppressed the statement on the basis that it was not voluntary due to the officers' promises of confidentiality. The trial court suppressed the statement made on January 22 on the basis that the defendant's Sixth Amendment right to counsel had attached and the officers' promise of confidentiality had never been revoked.

## I. Standard of Review

When an accused is afforded an evidentiary hearing on the merits of a motion to suppress, the findings of fact made by the trial court are binding upon the appellate court unless the evidence contained in the record preponderates against these findings. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." <u>Id</u>. Provided that the greater weight of the evidence supports the trial court's

6

findings, then those findings shall be upheld by the appellate court and the party prevailing in the trial court is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Id.

This court must now examine each statement given by the defendant and determine whether the trial court erred in finding they were not voluntary. To determine voluntariness, this court must look at the totality of the circumstances. Oregon v. Elstad, 470 U.S. 298, 318, 105 S. Ct. 1285, 1298, 84 L.Ed.2d 222, 238 (1985); State v. Crump, 834 S.W.2d 265, 271 (Tenn.), cert. denied, 506 U.S. 905, 113 S. Ct. 298, 121 L.Ed.2d 221 (1992). This court must also evaluate the last two statements given by the defendant to determine whether the trial court erred in finding they were obtained in violation of the defendant's Sixth Amendment right to counsel.

**II. January 11 Statement**

A confession must be freely, voluntarily and knowingly made or it should be suppressed because it was obtained in violation of the defendant's rights under the Fifth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution. State v. Pritchett, 621 S.W.2d 127, 133 (Tenn. 1981); State v. Gentry, 881 S.W.2d 1, 5 (Tenn. Crim. App. 1993). The Fifth Amendment applies to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964); State v. Crump, 834 S.W.2d at 268.

The test for the voluntariness of confessions pursuant to Article I, § 9 of the Tennessee Constitution is broader than the test for voluntariness under the Fifth

Amendment.  State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994); State v. Smith, 834 S.W.2d 915, 918-19 (Tenn. 1992).  As our supreme court noted in Crump:

> The significant difference between these two provisions is that the test of voluntariness for confessions under Article I, § 9 is broader and more protective of individual rights than the test of voluntariness was under the Fifth Amendment.

834 S.W.2d at 268; see State v. Smith, 834 S.W.2d at 915.

The defendant asserts that at the time he gave his first statement to the police he was so impaired by the medication he was receiving in the hospital that his statement was not the product of a free mind and rational intellect.  Before an accused is entitled to have his statement suppressed on the grounds that he was under the influence of alcohol and/or narcotic drugs, it must be established that the accused's faculties were so impaired that the statement could not be considered the product of a "free mind and rational intellect." Vandergriff v. State, 409 S.W.2d 370, 373 (Tenn. 1966);  State v. Robinson, 622 S.W.2d 62, 67 (Tenn. Crim. App. 1980), cert. denied, 454 U.S. 1096, 102 S. Ct. 667, 70 L.Ed.2d 636 (1981); see Bram v. United States, 168 U.S. 532, 18 S. Ct. 183, 42 L.Ed. 568 (1897).  If it is established that the accused was capable of giving a narrative of past events and/or relating his role in the commission of the offense, the statement is generally admissible notwithstanding the fact that the accused was under the influence of alcohol and/or narcotics when he made the statement.  State v. Green, 613 S.W.2d 229, 232-33 (Tenn. Crim. App. 1980); Dukes v. State, 578 S.W.2d 659, 663 (Tenn. Crim. App. 1978); Williams v. State, 491 S.W.2d 862, 866 (Tenn. Crim. App. 1972).

8

In the case sub judice, the defendant was under the influence of the sedatives Demorol and Phenergan for pain and nausea at the time the officers questioned him. Lieutenant Simmons admitted that during questioning the defendant "would fade in and out." Between questions, the defendant would turn his head away from the officers and close his eyes. The defendant had no recollection of this conversation with the officers afterwards.

As the record does not preponderate against the findings of the trial court, we agree with the trial court's determination to suppress this statement as an involuntary confession made by the defendant while he was under the influence of narcotics. This issue has no merit.

### III. January 13 Statement

The trial court suppressed the statement given at the Department of Safety Building on January 13 on two bases: (1) the statement was obtained in violation of the defendant's Sixth Amendment right to counsel and (2) the statement was not voluntary because it was procured by promises of confidentiality by the investigating officers. The state argues that the statements should not be suppressed since the defendant's Sixth Amendment right to counsel had not attached because adversarial proceedings had not been initiated against the defendant. The State of Tennessee also asserts that the conduct of the officers did not "undermine the accused's free will and critically impair his capacity for self-determination" sufficiently to bring about an involuntary confession.

### A.

9

A defendant's Sixth Amendment right to counsel does not attach until adversarial proceedings have been initiated. State v. Mitchell, 593 S.W.2d 280, 286 (Tenn.), cert. denied, 449 U.S. 845, 101 S. Ct. 128, 66 L.Ed.2d 53 (1980). In Tennessee, the beginning of the adversarial judicial process is marked by a formal charge such as an arrest warrant, indictment, presentment or preliminary hearing in cases where an arrest warrant was not first obtained. State v. Mitchell, 593 S.W.2d at 286; State v. Butler, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990).

In the present case, Lieutenant Simmons had obtained a subpoena duces tecum on January 13 for the defendant's medical records and blood tests. Later that day the defendant gave his second statement to the police at the Department of Safety building. The defendant's medical records were released prior to the interview.

The defendant asserts that the execution of the subpoena duces tecum constituted the initiation of the adversarial process and the attachment of the defendant's Sixth Amendment right to counsel. The defendant states issuance of the subpoena by the General Sessions Court Clerk and the style of the subpoena (State of Tennessee v. David Bornfriend) indicate that the adversarial process had been initiated against the defendant. The trial court suppressed the statement given on January 13 based upon the determination that the adversarial process against the defendant had begun.

There is no authority in Tennessee to support the proposition that the issuance of a subpoena duces tecum constitutes the initiation of the adversarial process. A subpoena duces tecum bears greater resemblance to a search warrant

10

than an indictment, presentment, or arrest warrant. In fact, the adversarial process was not initiated against the defendant until a warrant for his arrest was issued on January 23. Therefore, the defendant's Sixth Amendment right to counsel had not attached at the time his statements were given. The trial court erred in suppressing the statements given on January 13 on the basis that the defendant's Sixth Amendment right to counsel had been violated.

## B.

The trial court also suppressed the defendant's statement of January 13 on the basis that the confession was not voluntary due to promises of confidentiality by the investigating officers which had the effect of overcoming the defendant's will. The State of Tennessee asserts that the defendant's will was not overborne by promises of confidentiality because those promises were limited to questions relating to whether the defendant and Sarah Branscumb engaged in sexual activity. The state also argues that even if this court finds the statements made by the officers were in reference to the entire interview, these statements were not blanket promises of confidentiality but were merely guarantees that the information would not be revealed to the press.

During the second interview of the defendant, in response to the defendant asking whether he was required to answer these questions, Officer Hayes responded as follows:

Hayes:     You don't have to answer them, David.

*****

11

Hayes:     I understand that, sir. All we are trying to do is that we are trying to find out what the facts are, David. That's all we're doing. **What we are talking to you about in here is confidential. It's not going to be in the newspaper, on TV, nobody is going to know all this stuff. My files are strictly confidential.** The people who get my files are my bosses in Nashville and the District Attorney. Okay, that's all. If you were-just "yeah, we were" because at some point in time down the road, we may have to ask you to be more specific but today we are not going to get into all that, okay? (emphasis added).

At the conclusion of the interview, the officers reiterated to the defendant that "[t]his conversation, like we said, is confidential, **between us**." (emphasis added). The trial court reasoned that, "[t]he clear meaning of the word confidential is that it is confidential, it will not be used in any public proceeding such as in this courtroom," when he suppressed the statement as involuntary.

A confession must be "free and voluntary; that is, it must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542-43, 18 S. Ct. 183, 186, 42 L.Ed. 568 (1897); State v. Kelly, 603 S.W.2d 726, 727 (Tenn. 1980). "The Fifth Amendment does not condemn all promise-induced admissions and confessions; it condemns only those which are compelled by promises of leniency." Kelly, 603 S.W.2d at 729 (quoting Hunter v. Swenson, 372 F. Supp. 287, 300-01 (D.C.Mo. 1974)). The test for voluntariness in relation to police deception is whether based upon the totality of the circumstances, "the conduct of the law enforcement officers was such to undermine the accused's free will and critically impair his capacity for self-determination so as to bring about an involuntary confession." Crump, 834 S.W.2d at 271 (citing Culombe v. Connecticut, 367 U.S. 568, 602, 81 S. Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057-58 (1961); State v. Kelly, 603 S.W.2d at 728).

12

The promise of confidentiality occurred during the preliminary portion of defendant's statement to the police. The trial court implicitly found that following the promise of confidentiality, defendant made his statements in reliance upon the officers' promise. This is apparently a case of first impression on this precise issue, and other jurisdictions have determined that a promise of confidentiality by a law enforcement officer renders an otherwise voluntary statement involuntary. State v. McDermott, 131 N.H. 495, 554 A.2d 1302 (1989); State v. Nash, 228 Neb. 69, 421 N.W.2d 41 (1988); United States v. Wolf, 601 F.Supp. 435, 441-53 (N.D.Ill. 1984). After hearing the evidence, the trial court determined that defendant's statement of January 13 was involuntary based upon the officers' promise of confidentiality. Absent evidence preponderating against the findings of the trial court, the findings of fact of the trial court on a motion to suppress are binding. From our review of the record and the law, we concur that the officer's promise of confidentiality in the case sub judice operated to deprive Defendant of his free will and was not, therefore, voluntary under the totality of the circumstances. This issue is without merit.

## IV. January 22 Statement

The trial court also suppressed a statement given by the defendant on January 22 on the basis that the confession was obtained in violation of the defendant's Sixth Amendment right to counsel. The statement was also suppressed as an involuntary confession induced by the earlier promises of confidentiality which had not been revoked. The State of Tennessee asserts that the defendant's Sixth Amendment right to counsel had not attached and the prior confession was not illegally obtained.

13

The defendant returned to the Safety Building located on the University of Tennessee at Martin campus on January 22 after the investigators called the defendant in for a follow-up interview. This interview was not recorded and there is no transcript of this meeting in the record. The record indicates that the smoke detector in the defendant's room was discussed.

As to the first basis relied upon by the trial court in suppressing the statement, we have already ruled in this opinion that the defendant's statement of January 13 did not violate the defendant's Sixth Amendment right to counsel. We have found that the adversarial process against the defendant was not initiated until an arrest warrant was issued on January 23. Therefore, his Sixth Amendment right to counsel had not attached when the January 22 statement was given.

In suppressing the January 22 statement on the basis that the earlier promises of confidentiality had not been revoked and that the January 22 statement was therefore involuntary, the trial court relied upon our supreme court's decision in State v. Smith, 834 S.W.2d 915, 919 (Tenn. 1992). In Smith, the supreme court held that the provisions of Article I, Section 9 of the Tennessee Constitution necessitate that the extraction of an illegal, unwarned confession from a defendant raises a rebuttable presumption that a subsequent confession is tainted by the initial illegality. However, if the State can establish that the taint "is so attenuated as to justify admission of the subsequent confession," then the presumption may be overcome. Id., *quoting* Oregon v. Elstad, 470 U.S. 298, 335, 105 S.Ct. 1285, 1306-07, 84 L.Ed.2d 222 (1985). As noted previously in this opinion, the record is rather sparse concerning the January 22 statement of defendant. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996), mandates that the findings of fact made by the trial court are

14

binding upon the appellate court unless the evidence contained in the record preponderates against those findings. Unfortunately for the State, the facts contained in the record do not preponderate against the findings of the trial court in this case. Therefore, the trial court's judgment that the January 22 statement should be suppressed must be affirmed.

## V. Conclusion

This court concludes that the defendant's Sixth Amendment right to counsel did not attach until an arrest warrant was issued against him on January 23. Therefore, the trial court erred by using as a basis to suppress the statements that defendant's Sixth Amendment rights had been violated. However, the trial court was correct in suppressing the January 11 statement upon finding that the statement was not a product of a free mind and rational intellect and was therefore involuntary. Furthermore, the trial court was correct in its conclusion that the January 13 and January 22 statements should be suppressed because they were involuntary as a result of the State's promises of confidentiality. Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, Judge

CONCUR:

(Not participating)*_____
JOE B. JONES, Presiding Judge

_____
JOHN H. PEAY, Judge

*Judge Joe B. Jones died May 1, 1998, and did not participate in this opinion. We acknowledge his faithful service to this Court, both as a member of the Court and as its Presiding Judge.